UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MILDRED WALKER, ) </br> ) </br> Plaintiff, ) </br> vs. ) </br> ) </br> CLARK COUNTY SCHOOL DISTRICT, ) </br> ) </br> Defendant. ) </br> ) | Case No.: 2:14-cv-00064-GMN-VCF </br></br> **ORDER** |

Pending before the Court is Defendant Clark County School District's ("Defendant") Motion for Summary Judgment (ECF No. 25). Plaintiff Mildred Walker ("Plaintiff") filed a Response (ECF No. 32), and Defendant filed a Reply (ECF No. 36). Plaintiff also filed a Supplemental Response (ECF No. 33). For the reasons addressed below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.   BACKGROUND

This case centers upon workplace discrimination, retaliation, and hostile work environment claims by Plaintiff against her former employer, Clark County School District. (*See* Ex. 1 to Pet. for Removal, ECF No. 1). Plaintiff, an African-American female born in 1958, alleges that she worked as a teacher for Defendant from August 1991 until her disability retirement in March 2014. (*Id.* 8:23, 9:3, 14; Resp. 2:5–8, ECF No. 32). Plaintiff worked at Mario C. and JoAnne Monaco Middle School ("Monaco Middle School") during all relevant time periods. (Resp. 2:7–8, ECF No. 32). Neither party disputes that Plaintiff was subject to four disciplinary actions. (*Id.* 8–12; Mot. Summ. J. 3–4, ECF No. 25).

On November 9, 2011, Monaco Middle School Principal Lisa Medina issued Plaintiff a "low level reprimand" called a "summary of conference" for Plaintiff's alleged confrontations with students and other employees. (Mot. Summ. J. 7:9, ECF No. 25; Ex. 5 to Mot. Summ. J.

27, ECF No. 25). In one instance, a student reported that Plaintiff "took pictures of him in the health office restroom." (*Id.*). The summary of conference also states that Plaintiff "got into a verbal confrontation in [Principal Medina's] office with a support staff member" and "yelled at a fellow colleague for taking pictures of students [on campus] . . . in the presence of students." (*Id.*). Plaintiff denies that she took pictures of the student and disputes the nature of the confrontations. (*See* Resp. 8:27–10:15, 42, ECF No. 32). Specifically, Plaintiff claims that she did not "yell" at another teacher but rather "called out" to her. (*Id.* 9:23–24).

On April 30, 2012, Monaco Middle School Assistant Principal Stephen Wood issued Plaintiff an oral warning for events that occurred during Plaintiff's use of family medical leave from January to March 2012. (Ex. 7 to Mot. Summ. J. 34, ECF No. 25). According to the warning, Plaintiff failed to notify Monaco Middle School or the school's substitute teacher service of her absence. (*Id.*). During Plaintiff's absence, it was discovered that Plaintiff "had no emergency, daily or weekly lesson plans available for [her] substitutes . . . as directed in the Monaco Middle School Teacher Handbook." (*Id.*). The warning also notes that Plaintiff failed to input students' grades by the school's deadline. (*Id.*). At the investigatory conference regarding these incidents, Plaintiff explained that although she had prepared emergency lesson plans, they were unavailable during her absence because she had taken them home. (*Id.*). Further, Plaintiff denied that she did not contact substitute services or Monaco Middle School regarding her absence. (*Id.*). Plaintiff also stated that "[she] thought [she] had [input] student grades . . . and if [she] did not, it was not intentional." (*Id.*). Subsequently, Assistant Principal Wood issued Plaintiff a "satisfactory" performance evaluation for the 2011 to 2012 school year which referenced the incidents described in the summary of conference and oral warning and listed twelve improvement directives. (Ex. 6 to Mot. Summ. J. 29–32, ECF No. 25).

On November 5, 2012, Assistant Principal Wood issued Plaintiff a written warning for alleged confrontations that occurred in October 2012 between Plaintiff, students, and other

employees. (Ex. 8 to Mot. Summ. J. 29–32, ECF No. 25). According to the written warning, a student reported that Plaintiff "belittle[d] him about his age and stature." (*Id.*). The written warning also documents Dean of Students Sherri Small's statement that she witnessed a verbal confrontation between Plaintiff and the student. (*Id.*). Further, the written warning states that Plaintiff disrupted two staff meetings with "shout[ing]" and by "vocally stating personal complaints." (*Id.*). At the investigatory conference regarding these incidents, Plaintiff stated that she was "doing [her] duty when [she] encountered the student." (*Id.*). Plaintiff also denied that she was "loud, . . . condescending, or yelled . . . during the staff [meetings]." (*Id.*). In support of her version of events, Plaintiff submits statements from two individuals that "she was not disrespectful or condescending." (Ex. B to Resp. 12–13, ECF No. 32-1).

On April 11, 2013, Assistant Principal Wood issued Plaintiff an "unsatisfactory" performance evaluation. (Ex. 9 to Mot. Summ. J. 40, ECF No. 25). The evaluation found that Plaintiff "failed to meet standards" in the areas of "learning environment" and "professional responsibilities" because Plaintiff "did not satisfactorily address her previous directive [from the earlier evaluation] to demonstrate and maintain professional and collegial relationships with students, parents, colleagues and the administration." (Ex. 9 to Mot. Summ. J. 42, ECF No. 25). On this point, the evaluation again listed Plaintiff's alleged confrontations with students and other employees. (*Id.*).

Separate from these disciplinary actions, Plaintiff also alleges that Defendant discriminated against her because of her age and race by retaliating against her and creating a hostile work environment. (Ex. 1 to Pet. for Removal 10:4–24, ECF No. 1). Specifically, Plaintiff alleges that although she was in the pool of eligible candidates for administrative positions with the Clark County School District, Defendant discriminated against her by instead promoting younger, non-African-American individuals to administration. (Resp. 14:4–10, 15:4–16:2, ECF No. 32). In addition, Plaintiff claims that Defendant requested that she move

1  from a classroom that she had occupied for nine years to a new room so that Defendant could
2  place a younger, white, male teacher in her former room. (Ex. 1 to Pet. for Removal 14, ECF
3  No. 1).
4       In addition to these specific instances of alleged discrimination, Plaintiff also alleges
5  more generally that Defendant "harass[ed], taunt[ed], and discriminate[d] against plaintiff in
6  verbal and written manners." (*Id.* 3:16–20).  Further, Plaintiff complains that she was treated
7  differently than white employees through "harassment and bullying." (*Id.* 4:6–10).
8  Specifically, Plaintiff claims that she was "over-monitored" and responsible for an
9  "unprecedented number" of special education students and English language learners. (*Id.*
10 4:11–13).  Moreover, Plaintiff alleges that Defendant subjected her to "investigatory inquiries
11 [and] false statements," compromised her confidential information and safety, and issued her an
12 "unsatisfactory appraisal report." (*Id.* 4:13–15).  Plaintiff also claims without further
13 explanation that Defendant committed "several violations of the Family Medical Leave Act."
14 (*Id.* 4:15–16).  Finally, Plaintiff alleges that she was discriminated against despite oral and
15 written complaints "regarding unethical and discriminatory conduct by [Defendant's] staff"
16 made to Principal Medina on September 26, October 13, and October 14, 2011. (*Id.* 15).
17      Based on these allegations, Plaintiff filed a charge of discrimination with the Equal
18 Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission
19 ("NERC") (hereinafter referred to as "EEOC Complaint") on April 3, 2012, alleging claims of
20 race discrimination, retaliation, and hostile work environment in violation of Title VII of the
21 Civil Rights Act of 1964 as well as age discrimination in violation of the Age Discrimination in
22 Employment Act of 1967 ("ADEA"). (*See id.* 8:2–8; 14–15).  The EEOC issued a right-to-sue
23 ("RTS") letter on September 11, 2013. (*Id.*).  Plaintiff timely filed the Complaint in state court,
24
25

alleging the same violations of law to which the RTS corresponds.[1] (*See id.*). Defendant has moved for summary judgment on all of Plaintiff's claims. (Mot. Summ. J., ECF No. 25).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

---

[1] Plaintiff also makes vague references throughout her Response that Defendant's various actions violated the collective bargaining agreement ("CBA") between the Clark County School District and the Clark County Education Association. (*See* Ex. F to Resp., ECF No. 32-2). It is unclear whether Plaintiff is attempting to allege for the first time a claim against Defendant for violating the CBA. To the extent that she does, such a claim was never alleged in the complaint and is therefore untimely. *See* Fed. R. Civ. P. 8; *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). Further, Plaintiff's allegations that Defendant breached the CBA fail to demonstrate how Defendant discriminated against Plaintiff on account of her age or race. Accordingly, Plaintiff's claims, if any, that Defendant breached the CBA are not properly before the Court and will not be considered.

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

As an initial matter, due to Plaintiff's status as a pro se litigant, the Court has liberally construed her filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In the instant Motion, Defendant argues that it is entitled to summary judgment as to all of Plaintiff's claims. The Court will address each claim in turn.

### A. Title VII Discrimination

The Court analyzes Title VII discrimination claims within the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs., Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (citations omitted).

To establish a prima facie case, Plaintiff must present evidence showing: (1) she is a member of a protected class; (2) she was performing her job in a satisfactory manner; (3) she suffered an adverse employment action; and (4) that similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

If Plaintiff establishes a prima facie case, "the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (citations omitted). "If defendant meets this burden, [the plaintiff] must then raise a triable issue of material fact as to whether the

defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.*

While Plaintiff's evidence establishes that she was a member of a protected class and that she suffered an adverse employment action, Plaintiff has nevertheless failed to adequately support all of the necessary elements for a prima facie case of employment discrimination. It is undisputed that Plaintiff is African American, and therefore is part of a class protected under Title VII. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006); *Brooks v. Hilton Casinos, Inc.*, 714 F. Supp. 1115, 1119 (D. Nev. 1989). Additionally, the warnings and negative performance evaluation issued to Plaintiff constitute adverse employment actions. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) ("A warning letter or negative review also can be considered an adverse employment action."); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). However, Plaintiff fails to put forward sufficient evidence to demonstrate that she was performing her job responsibilities in a satisfactory manner, and therefore the Court finds that summary judgment is warranted as to the Title VII discrimination claim.[2]

Though Plaintiff disputes whether warnings and a poor performance evaluation were warranted, she fails to provide evidence demonstrating that she acted in accordance with Defendant's policies. In regard to the oral warning issued to Plaintiff based on her failure to prepare emergency lesson plans, input student grades by the school's deadline, or provide notification of her absence, Plaintiff merely contends that these "false allegations" occurred "when Plaintiff was on FML [Family Medical Leave]." (Resp. 12:2–3, ECF No. 32). Similarly, Plaintiff describes the series of confrontations between Plaintiff, students, and other employees recounted in the written warning and subsequently incorporated into the negative performance

---

[2] Because the Court finds that Plaintiff has failed to demonstrate that she was performing her job in a satisfactory manner, it does not reach the question as to whether Plaintiff has sufficiently shown that similarly situated individuals outside Plaintiff's protected classes were treated more favorably.

review as "totally false allegations." (Resp. 12:7–8, ECF No. 32).  Even accepting the vague statements offered by Plaintiff that "[she] was not disrespectful or condescending" during the October 12, 2012 staff meetings, Plaintiff does not provide any extrinsic evidence indicating that she adequately completed tasks or that her other confrontations and failures to prepare the lesson plans, input grades, and follow the school's absence procedures did not render her performance to be unsatisfactory. (*See* Ex. B to Resp. 12–13, ECF No. 32-1).  Plaintiff's uncorroborated, self-serving statements are insufficient by themselves to establish a genuine dispute of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony.") (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).  As her own self-serving statements are insufficient to raise a genuine issue of material fact, the Court finds that Plaintiff has failed to provide adequate support for this aspect of the claim.

Thus, Plaintiff has failed to provide sufficient evidence showing that she was performing her job duties in a satisfactory manner, and summary judgment is therefore warranted as to Plaintiff's Title VII discrimination claim.[3]  Further, because Plaintiff's references to other discriminatory employment actions by Defendants with regard to hiring and promotions are vague and unsupported by any further briefing or evidence, the Court finds that to the extent that Plaintiff makes these claims, they may also be dismissed.

### B.     Title VII Retaliation

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray*

---

[3] The Court also notes that the record is completely devoid of evidence indicating that Defendant's proffered reasons for the adverse employment actions were pretext for unlawful discrimination.  Thus, even if Plaintiff had established a prima facie case, summary judgment would nevertheless be warranted.

1  *v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  With this claim, Plaintiff asserts that the
2  warnings and negative performance evaluation were issued in response to her claims of
3  discrimination to Principal Medina and her EEOC Complaint. (Resp. 26:11–23, ECF No. 22).
4  Indeed, Plaintiff's complaints constitute protected activity. *See, e.g.*, *Ray*, 217 F.3d at 1240;
5  *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013).
6  Furthermore, as discussed *supra*, the warnings and negative performance evaluation constituted
7  adverse employment actions under Title VII. *See Fonseca*, 374 F.3d at 847.

8  However, Plaintiff fails to provide sufficient evidence demonstrating a causal link
9  between her complaints of discrimination and the adverse employment actions.  While close
10 temporal proximity can imply causation, such evidence is insufficient to withstand a motion for
11 summary judgment if it is not corroborated by the surrounding circumstances. *Dilettoso v.*
12 *Potter*, 243 F. App'x 269, 272 (9th Cir. 2007); *see also Coszalter v. City of Salem*, 320 F.3d
13 968, 977–78 (9th Cir. 2003).

14 The circumstances surrounding the issuance of the warnings and negative performance
15 evaluation in this case eliminate any inference that Defendant acted with retaliatory intent.
16 Though these adverse actions began within one to two months of Plaintiff's complaints of
17 discrimination, they each occurred within a few weeks of the incidents of misconduct in which
18 Plaintiff was allegedly involved.  This misconduct was reported by numerous witnesses, several
19 of whom were not employed by Monaco Middle School. (*See, e.g.*, Exs. 5 & 8 to Mot. Summ.
20 J. 27, 37, ECF No. 25) (documenting the statement of student witness that "[Plaintiff]
21 belittle[d] him about his age and stature" and employee's report "that [Plaintiff] confronted and
22 yelled at a fellow colleague").  Moreover, shortly after Plaintiff filed the EEOC Complaint,
23 Plaintiff received a "satisfactory" performance evaluation. (Ex. 6 to Mot. Summ. J. 29, ECF
24 No. 25).  Over a *year* later, Plaintiff finally received an "unsatisfactory" rating at her annual
25 performance evaluation, purportedly issued because Plaintiff "did not satisfactorily address her

previous directive[s]" focusing on the same confrontational behavior articulated in the summary of conference issued before Plaintiff filed the EEOC Complaint. (Ex. 9 to Mot. Summ. J. 42, ECF No. 25).

Therefore, because Plaintiff relies solely on temporal proximity as evidence of causation, and the surrounding circumstances negate any inference that Defendant acted with a retaliatory motive, the Court finds that summary judgment is warranted as to Plaintiff's Title VII retaliation claim.

### C.  Hostile Work Environment

To withstand a motion for summary judgment on a hostile work environment claim, a plaintiff must demonstrate that "(1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Manatt v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003).  In determining whether an environment is hostile or abusive such that it violates Title VII, courts consider "all the circumstances," such as "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004).

In this case, Plaintiff has alleged various grievances against Defendant that she claims amount to a hostile work environment.  In support of her allegations, Plaintiff has merely submitted her own e-mails and notes detailing her accounts of incidents she finds hostile, including: students using profane language (Resp. 17:12–13, ECF No. 32) ("Defendants ignored emails submitted by Plaintiff [recounting a student's use of] derogatory and profane comments, particularly the word 'nigger' . . . ."); employee informing Plaintiff "[she had] something on the back of [her] suit" when she did not (Ex. Y to Resp. 38, ECF No. 32-3);

employees from English Language Learning department disputing teacher's workroom assignment (Ex. B to Resp. at 8, ECF No. 32-1).

However, even assuming, *arguendo*, that Plaintiff has sufficiently shown that she was subjected to unwelcome conduct, Plaintiff has provided no evidence that these events amounted to anything other than isolated incidents or that Defendant was motivated by racial discrimination. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (holding that "offhand comments, and isolated incidents (unless extremely serious)" do not amount to discrimination); *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) ("One utterance [of profanity] alone does not create an objectively hostile work environment."). Moreover, the alleged incidents do not constitute "extreme conduct" that amounted "to a change in the terms and conditions of employment," as required for a Title VII hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."). As Plaintiff has failed to provide evidence supporting essential elements of this claim, the Court finds that summary judgment is warranted.

### D. The ADEA Claim

Although Plaintiff does not cite the ADEA in her Complaint, Plaintiff's EEOC Complaint attached to her Complaint makes numerous mentions of age discrimination in reference to her failure to receive promotions. (Ex. 1 to Pet. for Removal, ECF No. 1). Moreover, Plaintiff does mention the ADEA in her Response. (Resp. at 32, ECF No. 32). Further, not only was Defendant aware of Plaintiff's original proceedings before the EEOC, the instant Motion acknowledges Plaintiff's attempt to make out an ADEA claim. (Mot. Summ. J.

2:16–17, 12–13, ECF No. 25).  Accordingly, the Court will analyze the sufficiency of Plaintiff's allegations in light of this statutory provision.

In the Ninth Circuit, claims brought under the ADEA for failure to promote are evaluated under the same framework as Title VII failure-to-promote claims. *See Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1436 (9th Cir. 1990) ("Merrick's failure-to-promote claim is a claim of disparate treatment under the ADEA.  Such claims are analyzed by the same standard used to analyze disparate treatment claims under Title VII of the Civil Rights Act of 1964 . . . .").  "In a failure-to-promote case, a plaintiff may establish a prima facie case of discrimination in violation of the ADEA by producing evidence that he or she was (1) at least forty years old, (2) qualified for the position for which an application was submitted, (3) denied the position, and (4) the promotion was given to a substantially younger person." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

First, Plaintiff has alleged that she is at least forty years old, as required under 29 U.S.C. § 631(a). (Ex. 1 to Pet. for Removal 14, ECF No. 1).  Second, she has alleged that she was passed up for promotions to administrative positions. (Resp. 14:4–10, 15:4–16:2, 19:20, 20:12–13 ECF No. 32).  Plaintiff has failed, however, to demonstrate the two remaining elements.  As discussed *supra,* she has not demonstrated that she was satisfying the performance requirements of her position.  Although Defendant had included Plaintiff on its annual "Administrative Eligibility List" in 2012, Plaintiff failed to show that she remained eligible following the negative performance evaluation issued over a year later. (Ex. N to Resp. 10, ECF No. 32-3).  In addition, while Plaintiff alleges that younger employees were promoted to administrative positions, she has not submitted evidence indicating that these individuals were "substantially" younger.  She does not allege their ages at all.  Accordingly, the Court finds Plaintiff has failed to raise a genuine issue of material fact that Defendant failed to promote her because of her age.  Summary judgment on Plaintiff's ADEA claim is therefore proper.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 25) is **GRANTED.**

The Clerk of the Court shall enter judgment accordingly and close the case.

**DATED** this ___29 day of February, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge